```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                    HARRISON DIVISION
```

**KATHRYN WEDGEWORTH**                                              PLAINTIFF

       v.        Civil No. 06-3013

**BAXTER HEALTHCARE CORP.**                                         DEFENDANT

## O R D E R

Now on this 28th day of November, 2006, comes on for consideration **Defendant Baxter Healthcare Corporation's Motion For Summary Judgment** (document #25), and from said motion, and the response thereto, the Court finds and orders as follows:

1. Plaintiff alleges gender discrimination by her employer, in violation of Title VII of the Civil Rights Act of 1964 and the Arkansas Civil Rights Act of 1993, and age discrimination in violation of the Age Discrimination in Employment Act. The gravamen of her case is her allegation that although she was a long-time employee with high evaluations, she was passed over for two promotions in favor of younger male applicants.

Defendant denied the material allegations of the Complaint, and now moves for summary judgment.

2. Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States, 31 F.3d 696 (8th Cir. 1994).** Summary judgment is not appropriate

unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp., 45 F.3d 262 (8th Cir. 1995).** The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op, 838 F.2d 268 (8th Cir. 1988).**

3. Pursuant to **Local Rule 56.1**, the parties have filed statements of facts which they contend are not in dispute. From those statements, and from statements made in the pleadings and briefs of the parties, the following significant undisputed facts are made to appear:

* Plaintiff Kathryn Wedgeworth has been employed by defendant Baxter Healthcare Corp. ("Baxter") since July, 1975. Wedgeworth has a Bachelor's degree in Political Science, and currently holds the position of Quality Section Manager for the Transfusion Therapies department ("TT").

* On November 1, 2004, Baxter announced the upcoming retirement of the Manufacturing Director of the Plastics Department and the Manufacturing Director of TT, and sought internal applicants to fill both positions.

* Tony Johnson, Plant Manager -- who was ultimately

responsible for making the promotional decisions -- formed an interview team to recommend candidates for the two positions. This team consisted of Glenn Burney, Quality Manager; Larry Baker, Director of Transfusion Therapies; Doug Rucker, Director of Plastics; and Steve Hall, Human Resources Manager.

* Ten internal candidates applied for the two positions, including Wedgeworth, who was 52 years old. Wedgeworth applied for both positions.

* Johnson selected Cowart, who was 48 years old, for the Plastics position. Cowart had been employed by Baxter for 22 years. He had a Bachelor of Science degree in mechanical engineering, and had worked as a Quality Section Manager, Production Shift Supervisor, Production Supervisor, and Engineer.

* Johnson selected Webb, who was 37 years old, for the TT position. Webb had worked for Baxter for over twelve years. He had a Bachelor of Science degree in electrical engineering and a Masters of Science degree in industrial engineering. He had worked as a Quality Engineer, Senior Quality Engineer, Quality Section Manager, and a Manufacturing Manager.

* Johnson and the members of the interview team had worked with Wedgeworth, Cowart and Webb for many years.

4. Baxter contends that it is entitled to summary judgment on each of Wedgeworth's gender discrimination claims because she

can show neither direct nor indirect evidence of discrimination. Wedgeworth contends that she can produce both types of evidence, The Court has chosen to analyze the case from the perspective of indirect evidence only, finding it unnecessary to engage in the analysis of both forms of proof.

The indirect evidence paradigm in discrimination cases is well settled:

> the plaintiff must first establish a prima facie case of discrimination, whereupon the burden shifts to the employer to establish a legitimate, nondiscriminatory reason for taking the allegedly discriminatory action. If the employer presents such a reason, the plaintiff must show that the employer's proffered explanation is pretextual or his claim will fail.

**Hammer v. Ashcroft, 383 F.3d 722, 724 (8th Cir. 2004).**

5. In order to establish a prima facie case of gender discrimination under Title VII, Wedgeworth must show that she is a member of a protected group; that she was qualified for and applied for an available position; that she was rejected; and that an employee was promoted who was similarly situated but not a member of the protected group. **Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1046 (8th Cir. 2005).**

There is no dispute that Wedgeworth is a member of a protected group, females, nor any dispute that she was passed over for promotion in favor of individuals who were outside the protected group. Nor does Baxter seriously contend that Wedgeworth was unqualified, at least insofar as the TT position was concerned. Where Baxter contends that Wedgeworth fails to

make her prima facie case is on the issue of whether Wedgeworth was passed over in favor of "similarly situated" people.

Baxter first contends that Webb and Cowart are not similarly situated because they have engineering degrees whereas Wedgeworth's academic credentials are in political science. The problem with this position is that none of the decision-makers testified that the difference in educational background played any part in the decision to promote Webb and Cowart rather than Wedgeworth. Thus it is a distinction without a difference, not one which alters the "similarly situated" analysis.

Baxter also contends that "the decisionmaker had not personally experienced or heard reports of any conduct on Webb's behalf that would constitute poor management style or interpersonal skills, while the opposite is true of Wedgeworth." The problem with this position is that Wedgeworth's evaluations do not bear out these criticisms of her management style or interpersonal skills, and there is other evidence that she did not have such problems. There is a credibility issue as to this fact.

The burden of proving that one is "similarly situated" to the person actually promoted is "not onerous" when it involves making out a prima facie case, **Wheeler v. Aventis Pharmaceuticals, 360 F.3d 853, 857 (8th Cir. 2004),** and the Court finds that, for purposes of summary judgment, Wedgeworth has made out a prima facie case of gender discrimination.

6. Baxter next argues that Wedgeworth cannot rebut the legitimate, nondiscriminatory reason it offers for its decision to

select Webb and Cowart over Wedgeworth, i.e., that "Johnson selected Cowart and Webb for the positions at issue because he felt that the two employees were the most qualified and best suited for those positions."

Baxter argues that Wedgeworth "presented only her subjective belief that she was the most qualified candidate." This is not accurate. Wedgeworth elaborated on the specific objective criteria that she believed made her the best candidate. In addition, witness Theresa Goates -- also an applicant for the positions -- testified that she considered Wedgeworth the best candidate for the TT position.

In addition, the "best qualified" explanation is nebulous at best, and a jury could find that it is only a pretext to cover up gender discrimination. Johnson, for example, testified that "as a group, we did not feel like that [Wedgeworth] was the most qualified candidate," but he could not "specifically tell you exactly what was talked about." Others on the interview team were equally vague about how they reached their decision. Baker testified that they were looking for the best "team" members, but could offer no objective qualifications for that quality. Burney testified that there were no objective qualifications. Wedgeworth testified that Rucker told her, when she asked what criteria were used to make the selection, that there was "very little discussion, almost no discussion," that they "didn't talk about qualifications of any of the applicants," and that there were no objective criteria used.

-6-

To the extent that specifics were given for not selecting Wedgeworth, Johnson testified that it was because of her lack of management and interpersonal skills, and the fact that she was sometimes late for meetings. However, Wedgeworth's evaluations -- which members of the interview team agreed are important and should be as accurate as possible -- contradict the suggestion that Wedgeworth's management and interperson skills were wanting, and there was testimony that she was not the only manager who was late for meetings.

In addition, Wedgeworth gave the following testimony:

* "[I]n the 42 year history of Baxter, that females . . . have not gotten those higher level positions." She detailed promotions she and other women had applied for, and how in each case the historic qualifications for the position -- which the female applicant had -- turned out not to be the right ones, while the qualifications of a male applicant -- which were newly imposed -- were the right ones. She described the situation of trying "to in every year be pro-company and . . . give people the benefit of the doubt, just as long as you can, and you keep trying to do what they -- what's this little, you know, elusive criteria, subjective criteria that -- you know, that they throw out as a reason. But at some point it becomes a real problem and you -- you clearly see that it is discrimination."

* She testified that Rucker would make comments in

meetings to the effect that "women ought to be, you know, barefoot and pregnant," and that it was his notion "that women should stay at home. . . he was definitely very - very outspoken on his opinions on that subject."

* Wedgeworth also detailed several incidents where she applied for promotions but men with comparable experience, but who did not have college degrees, were promoted instead.

The Court does not view the foregoing testimony by Wedgeworth as "statistical evidence," the basis upon which Baxter objects to it, but rather as background evidence of the corporate culture against which Wedgeworth's other evidence is to be viewed. In particular, "[e]vidence of a changing hiring process and fluid standards for applicants, taken together with the defendant's evolving explanation of its hiring decision, would allow a reasonable jury to infer that the County's explanation is a pretext for unlawful discrimination." **Peterson v. Scott County, 406 F.3d 515, 522 (8th Cir. 2005).** When coupled with the vague nature of the reasons for their decision which were given by the members of the interview team, the Court finds that, for purposes of withstanding summary judgment on her gender discrimination claim, Wedgeworth has brought forth sufficient evidence of pretext.

7. Baxter also contends that it is entitled to summary judgment on Wedgeworth's Arkansas Civil Rights Act gender discrimination claim. The Arkansas Civil Rights Act makes the

right "to obtain and hold employment without discrimination" because of gender a civil right, and gives a person "injured by employment discrimination" a cause of action against her employer. **A.C.A. §16-123-107.** The Arkansas Supreme Court has held that "our state courts may look to federal decisions for persuasive authority when considering claims under the Arkansas Civil Rights Act." **Island v. Buena Vista Resort**, **352 Ark. 548, 556, 103 S.W.3d 671, 675 (2003).** The legal structure and interpretative guidance given for ACRA persuades the Court that, because summary judgment in favor of Baxter is not justified on Wedgeworth's Title VII gender discrimination claim, it is also not justified on her ACRA gender discrimination claim.

8. Baxter also contends that it is entitled to summary judgment on Wedgeworth's age discrimination claim. In order to establish a prima facie case of age discrimination under the Age Discrimination in Employment Act, Wedgeworth must show that she belonged to the protected class; that she was qualified for the position she sought; that she was rejected; and that the position was filled with an individual "sufficiently younger to permit the inference of age discrimination." **Hammer**, *supra*, **383 F.3d at 726** (citation omitted).

There is no dispute that Wedgeworth is in the protected class (individuals over the age of 40); that she was qualified for the position sought; and that she was rejected. The dispute on this claim centers on whether Webb or Cowart is sufficiently younger

than Wedgeworth to permit an inference of age discrimination, and whether there is any other evidence of age discrimination.

At the relevant time, Webb was 37; Cowart was 48; and Wedgeworth was 52. Baxter argues that these differences are not sufficient. The Court in **Hammer** avoided deciding how much difference in age was sufficient, but cited **Grosjean v. First Energy Corp.**, **349 F.3d 332 (6th Cir. 2003)** for a collection of cases to the effect that six years or less is not a substantial difference. The Court need not concern itself with whether the four-year age difference between Cowart and Wedgeworth is sufficient to carry Wedgeworth's case, because the age difference between Webb and Wedgeworth is clearly substantial and significant, and it appears from other testimony in the case that Wedgeworth was a much stronger candidate for the promotion Webb received than for that of Cowart.

The only other evidence of age discrimination is Wedgeworth's testimony that "my qualification I believe far exceeded those who were selected," and that shortly after the promotions were announced, she asked Burney about the criteria used in making the selections, and Burney told her that he "thought the promotions were made maybe for people who were more flexible in making moves to other locations." Wedgeworth interpreted this as an allusion to her age, theorizing that a person closer to retirement would be viewed as less willing to relocate for job-related reasons.

Although, as Baxter points out, Burney's statement could be

interpreted in more than one way, at this point the Court must indulge all inferences in favor of Wedgeworth, and in so doing concludes that she has made out a prima facie case (albeit a slim one) of age discrimination. Given that the same analysis of pretext applies to this claim as to the gender discrimination claim, the Court finds that summary judgment in Baxter's favor on this claim is not merited.

9. Baxter also argues that it is entitled to summary judgment on Wedgeworth's claim for punitive damages on her gender discrimination claims, and liquidated damages on her age discrimination claim.

Recovery of punitive damages on the Title VII gender discrimination claim requires proof that Baxter engaged in intentional gender discrimination with malice or with reckless indifference to Wedgeworth's rights. **Kolstad v. American Dental Association**, 527 U.S. 526, 535 (1999). The standard is essentially the same on Wedgeworth's state gender discrimination claim. **Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 497 (8th Cir. 2002). A.C.A. §16-123-107(c)** provides for punitive damages for one injured by "intentional discrimination by an employer."

Recovery of liquidated damages under the ADEA requires proof that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." **Hazen Paper Co. v. Biggins, 507 U.S. 604, 617 (1993).**

As Wedgeworth points out, there is evidence that Baxter had

-11-

an anti-discrimination policy, and that at least some of the management personnel involved in her case had received some training in the laws regarding discrimination. Given that evidence, the Court believes that if a jury finds that Baxter discriminated against Wedgeworth, it could also conclude that such occurred intentionally. The Court thus finds that summary judgment is not in order on these claims.

**IT IS THEREFORE ORDERED** that **Defendant Baxter Healthcare Corporation's Motion For Summary Judgment** (document #25) is **denied.**

**IT IS SO ORDERED.**

                                             **/s/Jimm Larry Hendren**
                                             **JIMM LARRY HENDREN**
                                             **UNITED STATES DISTRICT JUDGE**